UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TONYA JEAVONS                                              CIVIL ACTION

VERSUS
                                                            NO. 13-753-JJB
EXXON MOBIL CORPORATION

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This case is before the Court on a Motion for Summary Judgment (Docs. 34, 36) filed by the defendant, Exxon Mobil Corporation (Exxon). Tonya Jeavons (Jeavons), the plaintiff, filed an opposition (Doc. 40) to which Exxon replied (Doc. 41). Oral argument is unnecessary.

**Background**

Exxon hired Jeavons in August 2005 as an assistant operator on the cracking and light ends department. Jeavons worked under operators and first line supervisors, and she interacted with them regularly. Section supervisors were above the first line supervisors, and one of the section supervisors with whom Jeavons occasionally had contact was Lamar "Bo" Picou (Picou). Picou had other responsibilities, and Jeavons generally only saw Picou for several hours a month at safety meetings and during Picou's "walk arounds" of the facility. When they did interact, however, Jeavons and Picou did not get along, and Jeavons documented several run-ins between them.

The first incident occurred around 2010 or 2011. Picou refused to authorize Jeavons' request for a new coat for reasons that the parties dispute, though another supervisor, Ed Caputo (Caputo), ultimately authorized Jeavons to receive a new coat. Around the same time, there was another incident during a meeting: Jeavons refused to shake Picou's hand, preferring to offer him

1

a "fist bump" to limit the potential spread of germs, and Picou ordered her to shake his hand. In a similar incident, Picou ordered a male employee, Kurt Pruyn (Pruyn), to shake his hand.

Their third run-in involved a special assignment. Jeavons claims that Picou told the first line supervisor to choose someone other than Jeavons and another female employee, though Exxon disputes this and claims that Picou had no involvement in the selection process. Regardless, Jeavons did receive the special assignment. Jeavons' next allegation is that Picou gave negative feedback during her 2010 performance review, though Jeavons' first line supervisor—the person in charge of writing the review after gathering feedback from other supervisors—gave her a positive review in his final report.

The fifth incident centers on a safety meeting. Picou was in charge of the meeting and was dissatisfied with Jeavons' response[1] to a question. This dissatisfaction led Picou to have a discussion with several operators and a first line supervisor about making people participate in, and pay attention during, safety meetings. Exxon notes, however, that Picou never mentioned any names. The final incident occurred on August 14, 2012, when Picou ordered Pruyn, and then Jeavons, to hold "expectations meetings" with him[2] without any non-supervisors present. Jeavons claims that Picou berated her for an extended period of time before ordering her to be more involved and more of a "team player."

Throughout this period, Jeavons claims that she was constantly in fear of Picou and that several coworkers told her to "play Picou's game" to avoid being "head-hunted (sic)." (Doc. 40 at 9, 13). She further claims that Picou had several targets over the years at Exxon, including her,

---

[1] Picou asked Jeavons how she was performing her job safely, and she responded something to the effect of "I am doing everything to make sure I return home to my children safely." He felt that her answer was not specific enough and reflected a lack of engagement in the meaning.
[2] The evidence indicates these types of meetings were unique to those managed by Picou; other, similarly ranked supervisors did not hold such meetings.

Pruyn, and a female employee named Cathy Hargrave[3] (Hargrave). Due to her alleged anxiety and fear, Jeavons complained to Exxon's Human Resources Department. The department investigated the problem and interviewed several individuals, including Picou, Pruyn, and Jeavons. Ultimately, the department determined that Picou had not violated any internal harassment or equal opportunity rules, and they informed Jeavons of their decision on November 1, 2012.

On November 6, 2012, Jeavons announced her resignation. Jeavons had accepted a job with BASF, to whom she had initially applied in April of 2012; she received an offer in October for a position that began in late November. After Jeavons left, she contacted the EEOC in February of 2013 and ultimately filed a charge of discrimination on May 5, 2013. After receiving her right to sue letter, Jeavons filed her lawsuit, alleging a hostile work environment (HWE) related to harassment based on sex and constructive discharge due to the harassment under both federal and Louisiana employment discrimination statutes, on November 20, 2013.

## **Standard of Review**

A motion for summary judgment should be granted when the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The admissibility of evidence for summary judgment purposes conforms to the rules of admissibility at trial. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citations omitted). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Whether a fact is material will depend on

---
[3] Jeavons did not elaborate on the exact nature of the treatment suffered by Hargrave.

the substantive law. *Id*. When addressing a summary judgment motion, the court must make reasonable inferences in favor of the non-moving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). If the movant meets his initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmovant to identify or produce evidence that establishes a genuine dispute of material fact. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

## Analysis

Exxon moves for summary judgment on several[4] grounds. First, Exxon claims that Jeavons lacks sufficient evidence to create a genuine dispute of material fact regarding three of the elements of her HWE claim. Second, Exxon argues that Jeavons has failed to create a genuine dispute of material fact regarding constructive discharge. Third and finally, Exxon argues that summary judgment should be granted on the issue of punitive damages because Jeavons failed to offer any basis for such damages in her complaint or otherwise. Although Jeavons does not appear to respond to the punitive damages argument, she argues that she has met her burden to create a genuine dispute of material fact on both the harassment and constructive discharge claims.

    I.       Sexual Harassment/Hostile Work Environment

A HWE claim under Title VII requires that the plaintiff show five elements: first, that she is a member of a protected class; second, that she was subject to unwelcome harassment; third, that the harassment was based on her membership in the protected class; fourth, that the harassment was severe and pervasive to the extent that it affected a term or condition of

---

[4] Exxon also argues against a hypothetical disparate treatment claim, but no such claim beyond the constructive discharge issue is found in the complaint or in Jeavons' opposition, so it is unnecessary to address this issue. Exxon also opposes some of Jeavons' evidence as hearsay and some of the purported incidents as time barred, procedurally, but even if the evidence were not hearsay and the potentially time-barred incidents are considered, the Court's ruling would not change.

employment; and fifth, that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).)). As it concerns severity and pervasiveness, Title VII is not meant to police civility; to meet the standard of harassment, the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive . . . ." *Onacle v. Sundowner Offshore Servs., Inc.*, 118 S.Ct. 998, 1002–03 (1998). Exxon concedes that Jeavons is in a protected class, being female, and does not allege that any purported harassment was "welcome" rather than "unwelcome." However, they do challenge the remaining elements. Exxon first claims that Jeavons cannot establish that Picou's actions were motivated by her sex. Jeavons, Exxon notes, admitted that Pruyn, a male employee, received similar treatment. Further, Jeavons acknowledged that Picou had a strict management style and that this was widely known; according to Exxon, this demonstrates that Picou treated employees similarly regardless of sex. Jeavons, however, argues that because Picou opposed both her and another woman's appointment to a special assignment, this "gives . . . insight" into his "possible motivations." (Doc. 40 at 18). Exxon next argues that the allegations, taken as true, do not rise to the level of harassment and did not affect a term or condition of Jeavons' employment. Finally, the parties dispute whether Jeavons has sufficient evidence to create a genuine dispute of material fact regarding whether Exxon failed to react promptly once it knew Jeavons' complaints about Picou.

Jeavons has failed to establish a genuine dispute of material fact concerning whether the purported harassment was based on her sex. She has no evidence that her sex was a factor in any of the alleged incidents, and she specifically cites Picou's treatment of Pruyn, a male employee, as similarly unpleasant. She also claims that Picou was known for his "hit list," but she

acknowledges that several employees, male and female, have gained Picou's ire. *Id*. at 12. The only evidence that could connect Jeavons' sex to Picou's behavior is the incident where Picou allegedly told the first line supervisor in charge of a project that he should not select Jeavons or another woman[5] for that project. However, she offers no evidence that Picou's motivation for discouraging her or the other woman's selection was their sex—only speculation. Coupled with evidence that Picou's run-ins with employees included both men and women, this is insufficient to create a genuine dispute of material fact. Jeavons claims that Exxon has not proven that Picou's behavior was not motivated by sex, but the prima facie case for HWE is the plaintiff's burden. *Id*. at 18–19. For a HWE claim, Jeavons must satisfy all the elements, and there is no genuine dispute of material fact as to whether Picou's actions were motivated by Jeavons' sex.

However, even if there were sufficient evidence to create a genuine dispute of material fact regarding whether Jeavons' sex was the basis for Picou's behavior, her HWE claim would still fail on the "severe or pervasive" element. Jeavons claims that Picou's abrasive management style caused her to come to work every day fearful that she might lose her job for any misstep, no matter how minor. However, as Exxon points out, she only interacted with Picou on a limited basis. Further, the incidents that Jeavons described occurred over a two-year period and, though an exact timeline is unclear, were not particularly frequent. Even making favorable inferences in favor of Jeavons regarding her use of vacation days to avoid Picou[6] and remaining with Exxon for six months[7] after beginning the application process with BASF, a few incidents over two years involving a supervisor who the employee only encounters, at most, two or three times a

---

[5] Jeavons argues here that Picou said "neither of the women" when advising whom to select for the project, but the evidence shows that the foreman taking notes added "neither of the women," and there is no suggestion that there is anything but his descriptor of the two people whom Picou recommended against choosing. Further, Jeavons only argues that Picou was harassing her based on her sex, not the foreman or any other employee.

[6] Exxon argues this supports their argument, as it limited her contact with Picou even further, while Jeavons argues that it shows the emotional toll that interactions with Picou had on her.

[7] Exxon claims that this demonstrates that her situation was not intolerable and that she was merely waiting for another job opening, while Jeavons claims she was stuck working there so that she could provide for her family.

month, is not sufficient to meet the standard for constructive discharge. Jeavons may have felt nervous and anxious at work because of Picou's behavior, but the standard is an objective, "reasonable person" standard. There is no genuine dispute of material fact, and as a result, Exxon is entitled to judgment as a matter of law and summary judgment will be granted in their favor

    II.    Constructive Discharge

For a constructive discharge claim, the plaintiff must show that "a reasonable person . . . would have felt compelled to resign" under similar circumstances. *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). To establish this, the plaintiff must show a higher level of "'severity or pervasiveness'" than is required for a HWE claim. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (quoting *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir. 1990)). On this issue, Exxon and Jeavons essentially restate the same facts used to support their arguments regarding the harassment claim—though Exxon does emphasize more heavily that Jeavons spent several months looking for a job before quitting. Exxon argues that Jeavons cannot prove that Picou's actions were severe or pervasive enough for HWE, much less constructive discharge; Jeavons claims that her evidence clearly supports not only the necessary severity and pervasiveness for harassment but also constructive discharge.

The standard for a constructive discharge claim requires meeting the "severe and pervasive" element of a HWE claim, and because the Court has already ruled that there is no genuine dispute of material fact on that question, Exxon is also entitled judgment as a matter of law on this. Consequently, summary judgment will be granted in Exxon's favor on Jeavons' constructive discharge claim.

7

III. State Employment Discrimination Law Claims

Substantively, Louisiana's state employment discrimination law mirrors federal employment discrimination law. *Bustamento v. Tucker*, 607 So.2d 532, 538 n. 6 (La. 1992). Consequently, for the same reasons summary judgment will be granted in favor of Exxon on the federal HWE and constructive discharge claims, it will be granted in favor of Exxon on Jeavons' state employment discrimination law claims for HWE and constructive discharge.

IV. Punitive Damages

The Court has granted summary judgment in favor of Exxon on both of Jeavons' claims, and as a result, it is not necessary to address the punitive damages issue.

## **Conclusion**

For the foregoing reasons, Exxon's Motion for Summary Judgment (Docs. 34, 36) is GRANTED.

Signed in Baton Rouge, Louisiana, on April 14, 2015.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**